UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CITY OF PROVIDENCE, a Municipal Corporation;
ANGEL TAVERAS, in his capacity as the Mayor
of the city of Providence; JAMES J.
LOMBARDI III, in his capacity as Treasurer
of the city of Providence; JOHN A. MURPHY,
in his capacity as Tax Collector for the
city of Providence; CITY OF CRANSTON, a
Municipal Corporation; ALLAN FUNG, in his
capacity as the Mayor of the city of
Cranston; DAVID CAPUANO, in his capacity of
the Treasurer and Tax Collector for the
city of Cranston, on behalf of themselves
and all others similarly situated,

    Plaintiffs,

  v.                                                                    C.A. No. 12-481L

FEDERAL NATIONAL MORTGAGE ASSOCIATION,
a federally chartered private corporation;
FEDERAL HOME LOAN MORTGAGE CORPORATION,
a federally chartered private corporation;
and FEDERAL HOUSING FINANCE AGENCY, as
conservator for Federal National Mortgage
Association and Federal Home Loan Mortgage
Corporation,

    Defendants.
*****************************************
TOWN OF JOHNSTON, RHODE ISLAND, on behalf
of itself and all others similarly situated,

    Plaintiff,

v.                                                                        C.A. No. 12-668L

FEDERAL HOUSING FINANCE AGENCY, as
conservator for FEDERAL NATIONAL
MORTGAGE ASSOCIATION and FEDERAL
HOME LOAN MORTGAGE CORPORATION;
FEDERAL NATIONAL MORTGAGE ASSOCIATION,
a Federally chartered corporation;
FEDERAL HOME LOAN MORTGAGE CORPORATION,
a federally chartered corporation,

    Defendants.

**DECISION AND ORDER**

RONALD R. LAGUEUX, Senior United States District Judge.

This matter is before the Court on the Motions of Defendants to dismiss both lawsuits against them, pursuant to Fed. R. Civ. P. 12(b)(6). Because the legal issues presented in both cases are identical, these motions have been consolidated for the purpose of this decision. Plaintiffs in the first-filed case are the Cities of Providence and Cranston, as well as the Cities' mayors, treasurers and tax collectors in their official capacities. The second lawsuit was filed by the Town of Johnston. Defendants, the same in both cases, include the Federal National Mortgage Association ("Fannie Mae"), the Federal Home Loan Mortgage Corporation ("Freddie Mac"), and the conservator of both entities, the Federal Housing Finance Agency.

Plaintiffs have brought these lawsuits to compel Defendants to pay past and future real estate transfer taxes, customarily due from the seller of real property at the time that a deed is recorded by the municipalities. Defendants have refused to pay those taxes, and now move for the dismissal of the lawsuits, based on tax exemptions they allege were enacted by the United States Congress. For reasons explained below, the Court holds that Defendants are indeed exempt from these taxes, and grants the motions to dismiss both lawsuits in their entirety.

**Background**

Fannie Mae and Freddie Mac were established by acts of Congress to facilitate home ownership by providing a stable secondary mortgage market.  Both Fannie Mae and Freddie Mac purchase residential mortgages from private lending institutions, thereby making more capital available to those institutions for more home loans.  Both Fannie Mae and Freddie Mac are publicly-traded private corporations.  In 2008, when the mortgage market crashed, Fannie Mae and Freddie Mac were placed into conservatorship by Congress in order that their affairs could be wound up or reorganized.  The conservator, Defendant Federal Housing Finance Agency ("the Conservator"), is an independent federal agency.  When Fannie Mae and Freddie Mac were placed in conservatorship, they were holders of hundreds of thousands of mortgages whose homeowners were in default.  In many cases, Fannie Mae and Freddie Mac have since foreclosed on these homes, and resold the properties.

Rhode Island General Laws § 44-25-1 provides that the grantor of real property must pay a Real Estate Conveyance Tax, "which tax is payable at the time of making, execution, delivery, acceptance or presenting for recording of the instrument."  This tax ("the Transfer Tax") is collected by the municipality where the deeds are recorded.  The recent fiscal difficulties experienced by Plaintiffs, coupled with the high volume of property sales recorded by Defendants, have focused Plaintiffs'

attention on the lost revenue resulting from Defendants' refusal to pay the Transfer Tax.

Defendants assert that they are exempt from Transfer Taxes pursuant to explicit language in their charters. Each of the Defendant entities has statutory language conferring broad tax exempt status. The issues before the Court are twofold: 1) Is it among Congress' powers to confer tax exempt status on these private corporations? and 2) Does the statutory tax-exemption language include an exemption from Rhode Island's Real Estate Conveyance Tax? As detailed below, the Court determines that both questions must be answered in the affirmative.

## Standard of Review

Defendants move to dismiss the claims against them for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In considering a Rule 12(b)(6) motion, a court must accept as true all allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). The United States Supreme Court, in abrogating the frequently-cited Conley v. Gibson, 355 U.S. 41 (1957), restated the standard as follows: "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

563 (2007). While noting that the Supreme Court has further refined its requirements in Ashcroft v. Iqbal, 556 U.S. 662 (2009), this Court refrains from belaboring an explication of the standard further, as there are no factual issues in dispute in these consolidated matters.

## **Analysis**

Fannie Mae was created by Act of Congress, see 12 U.S.C. § 1716, and its tax exemption is set forth at 12 U.S.C. § 1723a(c)(2), as follows:

> The corporation, including its franchise, capital, reserves, surplus, mortgages or other security holdings, and income, shall be exempt from all taxation now or hereafter imposed by any State, territory, possession, Commonwealth, or dependency of the United States, or by the District of Columbia, or by any county, municipality, or local taxing authority, except that any real property of the corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent as other real property is taxed.

Freddie Mac's tax exemption, virtually identical to that of Fannie Mae, is found at 12 U.S.C. § 1452(e). The tax exemption conferred upon the Conservator by Congress provides:

> The Agency, including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any real property of the Agency shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed,

> except that, notwithstanding the failure of
> any person to challenge an assessment under
> State law of the value of such property, and
> the tax thereon, shall be determined as of
> the period for which such tax is imposed.

12 U.S.C. § 4617(j)(2).

### *The power of Congress to confer tax exempt status*

Plaintiffs argue that Congress has exceeded its enumerated powers under the Commerce Clause[1] by exempting Fannie Mae and Freddie Mac from taxes because they are private, publicly-traded corporations and not federal instrumentalities. Because the Conservator is standing in their shoes, Plaintiffs argue further, it too is ineligible for tax exemption. At oral argument, the Town of Johnston argued that, with the tax exemption statutes, Congress had exceeded its powers, infringing on Rhode Island's domain as delineated by the Tenth Amendment.[2]

The Court takes on this Constitutional argument first because, if this argument were to prove meritorious, it would end the Court's analysis. Although the Court gives this argument chronological priority, it is not Plaintiffs' most strenuous argument. In fact, Plaintiffs do not develop this argument with much enthusiasm; presumably because Congress' powers under the Commerce Clause are broad and well established.

---

[1] U.S. Const. art. I, § 8, cl. 3.

[2] U.S. Const. amendment X concerns "Powers reserved to states or people."

First, the Court notes that the enumerated powers bestowed on Congress by the Commerce Clause and the powers reserved by the States under the Tenth Amendment are "mirror images of each other." New York v. U.S., 505 U.S. 144, 156 (1992).  In New York v. U.S., the Supreme Court wrote, "If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States; if a power is an attribute of state sovereignty reserved by the Tenth Amendment, it is necessarily a power the Constitution has not conferred on Congress."  Id.

Pursuant to its powers under the Commerce Clause, Congress may regulate even intrastate activities so long as those activities substantially affect interstate commerce. U.S. v. Darby, 312 U.S. 100, 118 (1941); see also McCulloch v. Maryland, 17 U.S. 316, 421-22 (1819).  These regulatory powers include the power to create the entities necessary to carry out and facilitate governmental objectives.  Pittman v. Home Owners' Loan Corp., 308 U.S. 21, 32-33 (1939).  If Congress can establish, create and charter an entity such as Fannie Mae (which Plaintiffs herein do not challenge), then it is further within Congress' powers to shield that entity from taxation.  U.S. Const. art. I, § 8, cl. 18 ("To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers..."); McCulloch, 17 U.S. at 426 ("...a power to create implies a power

-7-

to preserve.").

Congress' authority to render private corporations tax exempt has been well established by the Supreme Court.  See U.S. v. City of Detroit, 355 U.S. 466, 474 (1958) ("Of course this is not to say that Congress, acting within the proper scope of its power, cannot confer immunity by statute where it does not exist constitutionally.")  In Carson v. Roane-Anderson Co., 342 U.S. 232 (1952), the Supreme Court upheld the statutory tax exemption provided to private contractors who had contracted with the Atomic Energy Commission to assist with the operation of an atomic energy plant in Oakridge, Tennessee:

> Certainly the policy behind the power of Congress to create tax immunities does not turn on the nature of the agency doing the work of the government. The power stems from the power to preserve and protect functions validly authorized – the power to make all laws necessary and proper for carrying into execution the powers vested in the Congress.

Id. at 234 (internal cites omitted).  See also Federal Land Bank of St. Paul v. Bismarck Lumber Co., 314 U.S. 95, 102 (1941); Pittman v. Home Owners' Loan Corporation, 308 U.S. at 32-33.

Plaintiffs argue further that Congress exceeded its powers when it conferred tax exempt status on Defendants because they are not "federal instrumentalities."  This argument seems be lifted from another type of case, and is not relevant to the present dispute.  See Herron v. Fannie Mae, 857 F.Supp. 2d 87, 92

(D.D.C. 2012) (Fannie Mae not a government actor for purpose of wrongful discharge claim).  Whether or not Defendants herein may be categorized as federal instrumentalities involves a lengthy and complex legal analysis.  The Court forgoes that analysis, holding that Congress has the clear authority under the Commerce Clause to establish entities, such as Defendants herein, with governmentally-endorsed objectives, and to render those entities exempt from taxation in furtherance of those objectives.

### *Does the language of the tax exemptions include the Transfer Taxes?*

Plaintiffs make two main arguments to support their position that the statutory language exempting Defendants from taxation must be construed narrowly to exclude the Transfer Taxes at issue here.  First, Plaintiffs argue that the statutory tax exemptions were never intended to immunize Defendants from an excise tax such as the Transfer Tax.  Alternatively, Plaintiffs argue that the exemption's exception or "carve-out" for real property taxes should include the Transfer Taxes.

### *Is "all taxation" a term of art?*

In reliance on a Supreme Court case, <u>U.S. v. Wells Fargo Bank</u>, 485 U.S. 351 (1988), Plaintiffs argue that the phrase "exempt from all taxation" is a legal term of art that means something less than <u>all</u> taxation.  The <u>Wells Fargo</u> case held that certain agency obligations, Project "Notes", issued in accordance

with the federal Housing Act of 1937, were subject to federal estate taxes although the Notes were "exempt from all taxation." In response to a housing shortage in the 1930s, Congress intended the tax-free Notes to help stimulate local financing for public housing projects.  For over thirty years, it was generally assumed that the Notes were exempt from federal income tax, but not federal estate tax.  In 1984, an Illinois district court ruled that the Notes were also exempt from federal estate tax.  A rush of litigation, followed by responsive Congressional legislation[3] reversing the court ruling, led to the <u>Wells Fargo</u> lawsuit, where executors of a Note-holder's estate challenged the imposition of the estate tax.  The Supreme Court held that while the Project Notes were exempt from direct taxation, such as income taxes, their conveyance, as part of an estate, could be taxed with an excise tax.  The Supreme Court wrote:

> Well before the Housing Act was passed, an exemption of property from all taxation had an understood meaning: the property was exempt from direct taxation, but certain privileges of ownership, such as the right to transfer the property, could be taxed.

485 U.S. at 355.  Plaintiffs herein point to this "understood meaning" to support their argument that "all taxation" is recognized and used by Congress as a term of art.

    Plaintiffs' argument relies on a mistaken understanding of

---

[3] The Deficit Reduction Act of 1984, section 641.

<u>Wells Fargo</u>.  <u>Wells Fargo</u> analyzes the tax-exempt status of the Project Notes; whereas, the present dispute concerns the tax-exempt status of an entire entity.  Property may be subject, or not, to direct taxation in the form of income or property taxes.  An entity, like a person, is subject to direct taxation on property or income, and is also subject to excise taxes on transactions, such as estate taxes or transfer taxes.  The owner of the Project Notes in <u>Wells Fargo</u> did not have to pay property taxes or income taxes on the Notes while he or she owned them, but when they were conveyed as part of an estate, the conveyance was taxable.

The case that controls the present dispute is <u>Federal Land Bank of St. Paul v. Bismarck Lumber Co.</u>, 314 U.S. 95 (1941).  The Federal Land Bank was created by Congress to lend money to cash-strapped farmers.  To carry out repairs on a foreclosed farm, the Federal Land Bank purchased building supplies from Bismarck, incurring an $8 sales tax.  Language in the statute creating the Federal Land Bank stated it was "exempt from Federal, State, municipal, and local taxation."  12 U.S.C. §§ 931-933 (repealed 1971).  Bismarck argued that it was improper for Congress to immunize from state taxation a lending bank engaged in non-governmental activities.  <u>Id.</u> at 101.  But the Supreme Court wrote:

> The federal government is one of delegated powers, and from that it necessarily follows

> that any constitutional exercise of its
> delegated powers is governmental.  It also
> follows that when Congress constitutionally
> creates a corporation through which the
> federal government lawfully acts, the
> activities of such corporation are
> governmental.

Id. at 102 (internal citations omitted).  Citing the Constitution's "necessary and proper" clause relied upon by this Court above, the Bismarck Court explained that it followed that "Congress has the power to protect the instrumentalities which it has constitutionally created[,]" by making such instrumentalities immune from taxation.  Id. at 102-3.

Plaintiffs' reading of Wells Fargo would essentially up-end Bismarck.  However, the Wells Fargo Court never even mentions the ruling in Bismarck.  Wells Fargo's failure to address Bismarck indicates to this writer that, while the Wells Fargo Court was talking about apples, the Bismarck Court was talking about oranges.  Recently the Sixth Circuit had occasion to review the very same argument in another lawsuit challenging Fannie Mae's and Freddie Mac's tax exempt status, County of Oakland, Michigan v. Federal Housing Finance Agency, __ F.3d __, 2013 WL 2149964 (6th Cir.).  After the district court ruled that Fannie Mae and Freddie Mac were not exempt from real estate transfer taxes in Oakland Cty. v. Fed. Hous. Fin. Agency, 871 F.Supp. 2d 662 (E.D. Mich. 2012), the Sixth Circuit reversed the ruling, explaining:

> While it is true that Wells Fargo says that

-12-

> the phrase "all taxation" had an understood meaning, contrary to plaintiffs' argument, that understood meaning applied to an "exemption of property from all taxation..." Wells Fargo, 485 U.S. at 355 (emphasis added), not an exemption of an entity. ...If the 1988 Wells Fargo decision was in some fashion altering the legal landscape with respect to how courts should interpret Congress' exemptions of entities from "all taxation," it seems likely that the Court would have discussed, or at least mentioned, its several prior decisions on the issue.

__ F.3d at __, 2013 WL 2149964 at 6. This Court finds further support for its conclusion that "all taxation" includes the Transfer Tax in the rulings of every other district court that has recently reviewed Fannie Mae's and Freddie Mac's tax status in the face of similar challenges brought by other municipalities across the nation. See Hager v. Federal Nat. Mortg. Ass'n, 882 F.Supp.2d 107 (D.D.C. 2012); Hertel v. Bank of America N.A., 897 F.Supp.2d 579 (W.D. Mich. 2012); Hennepin County v. Fed. Nat. Mortg. Ass'n, __ F.Supp.2d __, 2013 WL 1235589 (D.Minn.); Delaware County, PA v. Fed. Housing Finance Agency, slip copy, 2013 WL 1234221 (E.D. Pa.); Vadnais v. Fed. Nat. Mortg., slip copy, 2013 WL 1249224 (D.Minn.); Montgomery County, Maryland v. Fed. Nat. Mortg. Ass'n, 2013 WL 1832370 (D.Md.).

### *The real estate tax "carve-out"*

Fannie Mae, Freddie Mac and the Conservator are all on the hook for real estate taxes according to plain language in their statutes excerpted above. Fannie Mae's real estate exception

-13-

states: "...except that any real property of the corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent as other real property is taxed." 12 U.S.C. § 1723a(c)(2).  Freddie Mac and the Conservator both have virtually identical statutory language. See 12 U.S.C. § 1452(e) and 12 U.S.C. § 4617(j)(2).  Plaintiffs argue that this exception should be interpreted to include an obligation to pay the real estate Transfer Tax.

Plaintiffs complain that Defendants urge a broad construction of "all taxation," but a narrow construction of the real estate tax exception.  According to Plaintiffs, Defendants' constructions of the phrases in the statute are inconsistent with each other, and do not square with Defendants' reading of the direct/indirect tax issue in Wells Fargo.  Plaintiffs argue that the Transfer Tax is a tax on the "inherent privileges of ownership of real property – the right to publicly document its ownership of real property and to record the transfer to give notice to third parties."  ECF #26 at 19, C.A. 12-668.  Consequently, because the two taxes are so intertwined, the Transfer Tax should be included in the real estate tax exception to the exemption.  Plaintiffs' argument stems from the classic notion that property ownership is a "bundle of sticks," with the right to transfer the property constituting just one stick in the bundle.  U.S. v. Craft, 535 U.S. 274, 278-79 (2002).

Plaintiffs' argument is creative, but wrong.  Rhode Island's Transfer Tax is "paid by the grantor" at the time of conveyance. R.I. Gen. Laws § 44-25-1.  The Transfer Tax is an excise tax, imposing a fee on the seller for the privilege of recording the sale of property, thereby perfecting the buyer's legal interest in that property.  The Transfer Tax does not tax real property. On the other hand, real estate taxes are direct taxes levied on real property.  While they are payable by its owner, they also constitute a lien on the property.  R.I. Gen. Laws § 44-9-1(a). See Montgomery County v. Fed. Nat. Mortg. Ass'n, 2013 WL 1832370 at 11 (D.Md.); Hager v. Fed. Nat. Mortg. Ass'n, 882 F.Supp. 2d 107, 112 (D.D.C. 2012).

Defendants' statutory tax-exemption clause does not provide that the entities are liable for taxes related to real property; the exception makes them liable only for taxes on real property "to the same extent according to its value as other real property is taxed."  12 U.S.C. § 1723a(c)(2).  The language is plain and must be given its common sense meaning.  Doyle v. Huntress, 301 F.Supp. 2d 135, 142 (D.R.I. 2004) ("When interpreting a statute, the canons of construction dictate that the construing court must first look to the language of the provision itself and assume that the words of the statute comport with their ordinary meaning...").  Consequently, the Court holds that the exception for real estate taxes to the blanket tax exemption conferred to

-15-

Defendants by statute does not include the Transfer Tax.  In other words, Defendants do not have to pay the Transfer Tax, or any other tax, except for real property tax on property they own.

## **Conclusion**

For these reasons, the Court grants Defendants' Motions to Dismiss in these consolidated matters, dismissing both lawsuits in their entirety.  The Clerk shall enter judgment for Defendants accordingly.

It is so ordered.


/s/ Ronald R. Lagueux
Ronald R. Lagueux
Senior United States District Judge
July  24, 2013